**No. 48885.**—Protest 69131–K of Geo. S. Bush & Co., Inc. (Seattle).

COLE, Judge:   The question presented in this case is purely one of fact, to wit, whether hair nets exported from China in January 1940, and entered at the port of Seattle, Wash., in March 1940, were composed of animal hair, as classified by the collector, or of human hair, as claimed by plaintiff.   The assessment was made at 40 percent ad valorem under the provision in paragraph 1525, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1525) for manufactures of cattle hair, not specially provided for, and the protest claim is that duty should be paid at 35 percent ad valorem under paragraph 1523, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1523) as nets of which human hair is the component material of chief value.

The United States examiner who advisorily classified the merchandise identified samples thereof which were received in evidence as exhibits 1 and 2 at the hearing in Seattle, and testified that his official action was based on an analyst's report from San Francisco, where the samples had been sent for examination.

Oral testimony of two witnesses was offered to support plaintiff's contention. The importer testified that he has been engaged in the manufacture of cosmetics and the purchase and sale of all types of hair goods, including hair nets, for a period of "about thirty years," that his experience with animal hair has been limited to what has been represented and which he bought as yak hair, having never seen the animal itself, and that the only human hair he handled was the commercial type recognized as white hair "because in the market that is the type which you buy and sell that has originally been bleached white." He testified he could distinguish between the two kinds by appearance and touch, stating that the human hair is straight with little, or no kinks or waves and is of soft texture, except Chinese hair, which is "a little coarser" and is given a different color by bleaching, whereas the animal or yak hair is fuzzy and very coarse and of different color than human hair.   After identifying certain merchandise (illustrative exhibit A) as yak hair, he compared it with the instant merchandise (exhibits 1 and 2), and expressed the opinion that the latter was human hair, stating, on cross-examination, that it was softer than the yak hair.

A wigmaker with 38 years' experience also testified on behalf of the plaintiff. He stated that he bought all the hair, both animal and human, used by his firm, and was able to distinguish the two kinds.   Although he admitted never having imported any merchandise from China, he was permitted to testify that the merchandise in question was hair which has been represented to him and which he bought as Chinese human hair, basing such opinion on the texture of the goods.

When reports of Government analysts (exhibits 3 and 4 for identification) were offered by defendant, plaintiff objected to their admission because "the chemists may not at all be qualified or know anything about this material," whereupon the court ordered transfer of the case to San Francisco for testimony of the chemist who examined the merchandise.

At the trial in San Francisco, the Government's chief chemist there was called by defendant and testified that he had had considerable experience examining imported hair nets to determine if they were of animal or human hair, principally "in the period following the last World War, from 1919 on," when importations of hair nets were frequent and the question was an important one, and that receipt of the instant merchandise presented the first opportunity in the last 5 years of such examination. He stated that "physically yak hair and human hair might be very similar," and that the only way he knew of distinguishing between them was by microscopic examination, which he had uniformly followed, using known strands of yak hair and human hair as standards to make his determination. His testimony concerning the instant merchandise is basis for the following factual findings: Samples (exhibits 1 and 2) were received from the appraiser at Seattle, which were examined microscopically, and when compared with a known standard of yak hair were found to differ from the latter in texture and in the scaling and medulla or pith, which resulted in the conclusion that one exhibit (Number 1) was composed entirely of yak hair, and the other (Number 2) consisted partly of yak hair and partly of human hair, findings that were substantiated by the analyst at New York who subsequently examined the exhibits at the request of the San Francisco chemist.

Vitally important to the determination of this case is the examination of the instant merchanise made by the witness during the trial, at the suggestion of plaintiff's counsel, to prevent any "possibility that the court might find that you did not examine exhibits 1 and 2." The two exhibits were examined microscopically and comparison thereof was made with known specimens of yak hair and the human hair of an oriental and that of a Caucasian. The following testimony expresses the witness' findings, which agree with those based on his earlier examination:

Q. What is your opinion as the result of that [the microscopic examination]?—A. On exhibit 1 the hair net is composed wholly of animal hair, not human hair. In the opinion of this laboratory—which would be my opinion—it is yak hair. Exhibit 2, the hair net contains double hairs, one being gray and the other brownish-black in color. The gray colored hair is animal hair, not human hair. In the opinion of this laboratory, it is yak hair. The brownish-black hair is evidently human hair, not yak hair.

*        *        *        /        *        *        *        *

Q. And would you please tell us the characteristics of these samples, exhibits 1 and 2, as revealed under the microscope which indicated to you that they were animal hair?—A. Exhibit 1, hair did not have any of the characteristics of human hair, and more closely resembled yak hair.

Q. Would you please tell us what the characteristics of yak hair are on which you based your determination?—A. Human hair has characteristic scales that are peculiar to it. Yak hair does not show these characteristic scales under the microscope. Yak hair has a large medulla, which commonly might be called the marrow, or pith, of the hair, which is quite large in the case of yak, whereas in human hair it is very thin.

There was no rebuttal testimony offered by plaintiff despite the fact that the merchandise in question appears, from the record, to be peculiarly susceptible to laboratory test in order to determine its correct tariff status.

Plaintiff's brief emphasizes the apparent doubt entertained by defendant's witness in reporting to the Seattle appraiser his examination of the merchandise. His letter to the customs official said, "In our experience it has been difficult to distinguish between these hairs with any degree of certainty," but it was quite specific, however, in reporting, after careful laboratory microscopic examination, a conclusion defeating plaintiff's claim. Plaintiff had knowledge of the attitude of Government chemist sufficiently long before the final submission of the case to have supplied contradictory evidence of an expert character, if such could have been obtained.

The preponderance in weight of the evidence substantiates the classification fixed by the collector. Although it appears that one item of the hair nets in question is composed in part of human hair, there is no proof that such material is in chief value, and therefore it has not been sufficiently identified to be properly classifiable as alleged by plaintiff.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.